**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LUIS ROLDAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CICERO, DETECTIVE JASON STROUD, DETECTIVE JOHN SAVAGE, DETECTIVE EDUARDO ZAMORA, DETECTIVE ALFRED AURIEMMA, DETECTIVE ATTILIO FIORDIROSA, COOK COUNTY, and ASSISTANT STATE'S ATTORNEY PAUL JOYCE in his individual capacity, | ) | |
| | ) | JURY DEMAND |
| Defendants. | ) | |

**COMPLAINT**

NOW COMES the Plaintiff, LUIS ROLDAN, by and through his attorney, LAW OFFICE OF SAMUEL SHIM, for his complaint against the CITY OF CICERO, DETECTIVE JASON STROUD, DETECTIVE JOHN SAVAGE, DETECTIVE EDUARDO ZAMORA, DETECTIVE AL AURIEMMA, DETECTIVE ATTILIO FIORDIROSA, COOK COUNTY, and ASSISTANT STATE'S ATTORNEY PAUL JOYCE (collectively "Defendants"), states as follows:

**Introduction**

1. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of plaintiffs rights as secured by the United States Constitution.

2. As a result of the defendants' malfeasance, including but not limited to, failure to disclose relevant *Brady/Giglio* material regarding the alleged victim, Plaintiff ROLDAN and ABRAHAM RAMOS were wrongfully convicted of a criminal sexual assault that

they did not commit. ROLDAN was sentenced to eight years' imprisonment and RAMOS was sentenced 12 years' imprisonment.

3. In all, plaintiff ROLDAN spent over three years in the custody in the Illinois Department of Corrections.

4. After asserting their innocence for many years without success, the Illinois appellate court reversed plaintiff ROLDAN and RAMOS' convictions outright. The appellate court issued the mandate on ROLDAN's appeal on November 13, 2015. The mandate on RAMOS's appeal was issued on April 29, 2016.

5. As a direct and proximate result of the acts of the defendants described herein, plaintiff has suffered and continues to suffer damages including loss of his physical liberty, emotional distress, and other nonpecuniary losses.

6. Plaintiff brings this action seeking compensatory damages to remedy his injuries as well as punitive damages against each individual defendants.

**Jurisdiction and Venue**

7. This court has jurisdiction of the action pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b). Upon information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within this district. Jurisdiction for Plaintiffs' state claims are based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**The Parties**

8. At the time when the events giving rise to this case occurred, plaintiff ROLDAN was a 21-year-old working as a delivery truck driver. RAMOS was an 18-year-old student at Morton High school. Plaintiff had never been arrested nor had any trouble with the law, and, to this date, plaintiff has never been arrested, nor had any trouble with the law other than the unlawful arrest and imprisonment complained of herein.

9. Presently, plaintiff ROLDAN is 27-years-old and is employed at The Boulevard in the housekeeping department.

10. Defendant PAUL JOYCE was, during the relevant time period, an employee of the Cook County State's Attorney's Office and is believed to be a resident of this judicial district. Upon information and belief, he is still employed by the Cook County State's Attorney's Office as an Assistant State's Attorney.

11. The other individual defendants are duly appointed and sworn City of Cicero police detectives and employees of the Cicero Police Department or were employees at the time of the events described in this case.

12. At all relevant time period, all individual defendants were acting in the course and scope of their employment and under color of state law, ordinance and/or regulation.

13. All individual defendants are sued in their individual capacities.

14. Defendant, Cook County, is an Illinois Municipal Corporation, and was and is the employer of defendant PAUL JOYCE. Cook County is responsible for the acts of defendant JOYCE while employed by the Cook County and while acting within the scope of his employment.

15. Defendant City of Cicero, is an Illinois Municipal Corporation, and was and is the employer of Defendant detectives. The City of Cicero is responsible for the acts of defendant detectives while employed by the City of Cicero and while acting within the scope of their employment.

**Factual Allegations**

16. On March 6, 2011, plaintiff ROLDAN and RAMOS were arrested by the members of the Cicero Police Department and charged with three counts of criminal sexual assault of J.T.

17. On January 4, 2013, a joint bench trial commenced before the Honorable Noreen V.

Love, in the Circuit Court of Cook County, Criminal Division.

18. The evidence adduced by the prosecution, specifically defendant JOYCE, established that on March 6, 2011, J.T., Yesenia Guerrero and Esperanza Castellanos had planned to go to a movie theater in Cicero, Illinois to celebrate Guerrero's seventeenth birthday.

19. When the trio could not decide which movie to see, they called RAMOS and he arrived at the theater with his female cousin, Isamar Baez. The entire group then drove to RAMOS' aunt's house in Cicero, Illinois, where RAMOS was living at the time.

20. Upon arriving at RAMOS' aunt's home, RAMOS gave GUERRERO a one-liter bottle of vodka that was one-third to one-half full and told her it was her birthday gift.

21. J.T. took a drink from the bottle after GUERRERO began drinking straight from the bottle. When GUERRERO finished the bottle of vodka, RAMOS produced another bottle of vodka for them to drink.

22. At that time, plaintiff ROLDAN arrived at the home with some orange juice which was used to make mixed drinks. Everyone then began playing drinking games.

23. Later they decided to buy the orange juice from Walgreen's. Esperanza and RAMOS, J.T. and ROLDAN walked to Walgreen's. Yesenia stayed and slept at the home of Abraham's aunt because she was too drunk to walk.

24. J.T. and ROLDAN kissed in Walgreen's. Later J.T. had an argument with Abraham outside the store.

25. J.T. asked ROLDAN to have sex. They had sex in ROLDAN's car after came out from Walgreen's.

26. When J.T. returned from Walgreen's to the home of RAMOS' aunt, based on the testimonies of Yesenia, Esperanza, Isamor and RAMOS, she seemed fine and did not look like she was drunk.

27. After J.T. returned home of RAMOS' aunt, she and Esperanza made a "silly" video in

the bathroom together to post on Facebook, during which J.T. had no trouble responding to Esperanza's questions and did not need assistance getting off the toilet or walking out of the bathroom.

28. A few minutes later J.T. had sex with RAMOS in the bedroom. RAMOS testified that J.T. asked him to have sex and kissed him. RAMOS testified that during the sex J.T. was behaving normally. RAMOS testified that Esperanza was knocking the door so that they finished the sex. RAMOS testified that he gave J.T. a blue pants and J.T. put them on. RAMOS testified that J.T. then went back the bed and he stepped out the room.

29. J.T.'s parents arrived at the house a few minutes later and discovered J.T. lying on the bed in a boy's pants. J.T. appeared to be unconscious.

30. When the police and the paramedics arrived, J.T. was belligerent and swearing at her parents as she was taken away by the paramedics.

31. Based on J.T. testimony, she remembered almost everything until the argument with RAMOS outside the store, and her next recollection was hearing "a lot of loud noise" and sitting in a chair in the hospital the following morning.

32. On January 7, 2013, after a bench trial before the Honorable Judge Noreen Love, plaintiffs were found guilty of Criminal Sexual Assault. Subsequently, defendant RAMOS was 12 years' imprisonment while defendant ROLDAN was sentenced to eight years' imprisonment.

33. On September 14, 2015, Illinois Appellate Court reversed outright plaintiff ROLDAN's conviction for criminal sexual assault and issued the mandate on November 13, 2015.

34. On February 16, 2016, the Appellate Court reversed outright plaintiff RAMOS' conviction and issued the mandate on April 29, 2016.

35. In both cases, the appellate court found that the evidence was insufficient to prove the defendant's guilt beyond a reasonable doubt.

**Count I - 42 U.S.C. § 1983**

**Deprivation of Right to Fair Trial and for Wrongful Conviction**

36. Plaintiff re-alleges paragraphs 1 through 35 as if fully restated herein.

37. Defendants, individually, jointly, and in conspiracy, caused the wrongful charging, prosecution and conviction of plaintiffs, and the continuation of said wrongful conviction, by coercing, constructing, altering, manipulating and fabricating the evidence which formed the basis for plaintiff's charging, prosecution and conviction; by withholding from the prosecutors, judges and defense attorneys involved in plaintiff's prosecution the fact that this evidence was false, fabricated, manipulated, altered, and coerced; by suppressing and destroying additional exculpatory evidence; by giving a false and incomplete version of events to prosecutors; by writing false reports and giving false testimony; and by the additional wrongdoing set forth above, thereby unconstitutionally depriving plaintiffs of their liberty and violating their right to a fair and impartial trial and not to be wrongfully convicted, as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

38. Specifically, defendant detectives arrested the plaintiffs without probable cause.

39. Upon information and belief, the defendant detectives knew that J.T. had requested defendant JOYCE and/or other assistant state's attorney for their assistance in obtaining an U-Visa, a visa that provides temporary legal status and work eligibility for a period of four (4) years in the United States.

40. Defendant detectives failed to disclose that fact to the judge and defense attorneys involved in plaintiff's prosecution.

41. Upon information and belief, defendant JOYCE knew or should have known of the fact that J.T. had requested him and/or other assistant state's attorney for their assistance in obtaining a U-Visa.

42. Defendant JOYCE failed to disclose that fact to the judge and defense attorneys

representing ROLDAN and RAMOS in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

43. The actions of the defendants in depriving plaintiffs of their right to a fair trial and not to be wrongfully convicted were the direct and proximate cause of the injuries to plaintiffs which are set forth above.

WHEREFORE, plaintiff demands judgment against these defendants for compensatory damages, and, because these defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for plaintiff's constitutional rights, for punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

**Count II - 42 U.S.C. § 1983**

**Fourth and Fourteenth Amendment Claim for Malicious Prosecution**

44. Plaintiff re-alleges paragraphs 1 through 35 as if fully restated herein.

45. Defendants, despite knowing that probable cause did not exist to arrest and prosecute plaintiff for the alleged assault on J.T., acted individually and in concert to cause plaintiff and RAMOS to be arrested and prosecuted for that crime, thereby violating plaintiff's right pursuant to the Fourth and Fourteenth Amendments of the United States Constitution to be free of unreasonable searches and seizures and to due process.

46. Specifically, despite the fact that the defendants were aware of information that probable cause did not exist to arrest plaintiff and RAMOS, the defendants intentionally caused plaintiff and RAMOS to be arrested and prosecuted for the alleged assault on J.T.

47. Furthermore, the defendants intentionally withheld from and misrepresented to defense counsels and the judge relevant exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972)

48. The defendants performed the above-described acts deliberately, with reckless disregard for the truth, and with malice.

49. As a direct and proximate result of the defendants' actions plaintiff was wrongly convicted and imprisoned and was deprived of his freedom for more than three years, and suffered the other grievous and continuing injuries and damages as set forth above.

WHEREFORE, plaintiff demands judgment against these defendants for compensatory damages, and, because these defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for plaintiff's constitutional rights, for punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

**Count III - 42 U.S.C. § 1983**

***Monell* Claim against City of Cicero**

50. Plaintiff re-alleges paragraphs 1 through 35 as if fully restated herein.

51. Upon information and belief, the actions of defendant detectives, as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the Defendant City of Cicero, its Police Department, Police Board, and/or City Council.

52. Upon information and belief, at all times material to this complaint, defendant City of Cicero and its Police Department had interrelated *de facto* policies, practices, and customs which included, *inter alia*:

a) filing false reports and giving false statements and pursuing and obtaining wrongful prosecutions and false imprisonments on the basis of such reports and statements;

b) the failure to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers, particularly those who were repeatedly accused of wrongful imprisonments, malicious prosecutions and wrongful convictions and of making false reports and statements;

c) the police code of silence, specifically in cases where police officers refused to report or otherwise covered up instances of police misconduct, and/or the fabrication, suppression and destruction of evidence of which they were aware, despite their obligation under the law and police regulations to do so.

d) covering up, suppressing and withholding exonerating, exculpatory, and/or other evidence favorable to criminal defendants.

53. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, encouraged, *inter alia*, the fabrication, manipulation, and alteration of evidence, the making of false statements and reports, the giving of false testimony, and the pursuit and continuation of wrongful convictions and false arrests and imprisonments, and were, separately and together, a direct and proximate cause of the unconstitutional acts committed by the named defendants and their co-conspirators, and the injuries suffered by the plaintiff.

54. Additionally, said failure to properly train, discipline, monitor, control, assign, transfer, supervise, and counsel the police defendants was done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to plaintiff.

55. On the basis of the foregoing, City of Cicero is liable to plaintiff for his injuries.

56. Plaintiff's injuries were also caused by the policies and practices on the part of the City of Cicero of failing to disclose *Brady/Giglio* evidence and other exculpatory evidence where it is designed to encourage prosecutions and secure convictions regardless of actual guilt or innocence.

57. Upon information and belief, Municipal policy makers and department supervisors were aware of, and condone and facilitate by their inaction, a code of silence in the Cicero Police Department and the City of Cicero, by which officers fail to report and otherwise

lie about misconduct committed by other officers, such as the misconduct at issue in this case.

58. Upon information and belief, the City of Cicero failed to timely act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite the actual knowledge of the same, thereby ratifying the unlawful practices and causing the types of injuries described herein.

59. Upon information and belief, the policies and practices described in the foregoing paragraphs were consciously approved at the highest policy making level for decisions involving the City of Cicero, and were a proximate cause of the injuries suffered here by the plaintiff.

60. On the basis of the foregoing, the City of Cicero is liable to plaintiff for his injuries.

**Count IV - 42 U.S.C. § 1983**

***Monell* Claim against Cook County**

61. Plaintiff re-alleges paragraphs 1 through 35 as if fully restated herein.

62. Upon information and belief, the actions of defendant JOYCE, as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the Defendant COOK COUNTY and COOK COUNTY STATE'S ATTORNEY'S OFFICE.

63. Upon information and belief, at all times material to this complaint, defendant COOK COUNTY and the COOK COUNTY STATE'S ATTORNEY'S OFFICE had interrelated *de facto* policies, practices, and customs which included, *inter alia*:

a) not disclosing exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) and pursuing and obtaining wrongful prosecutions and false imprisonments on the basis of such malfeasance;

b) the failure to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control assistant state's attorneys, and failing to disclose relevant evidence favorable to the accused; and

c) covering up, suppressing and withholding exonerating, exculpatory, and/or other evidence favorable to criminal defendants.

64. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, encouraged, *inter alia*, the fabrication, manipulation, and alteration of evidence, the suppression of relevant exculpatory evidence, the giving of false testimony, and the pursuit and continuation of wrongful convictions and false arrests and imprisonments, and were, separately and together, a direct and proximate cause of the unconstitutional acts committed by the named defendants and their co-conspirators, and the injuries suffered by the plaintiff.

65. Additionally, said failure to properly train, discipline, monitor, control, assign, transfer, supervise, and counsel defendant JOYCE was done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to plaintiff.

66. Plaintiff's injuries were also caused by the policies and practices on the part of the Cook County of failing to disclose *Brady/Giglio* evidence where it is designed to encourage prosecutions and secure convictions regardless of actual guilt or innocence.

67. Upon information and belief, municipal policy makers and department supervisors are aware of, and condone and facilitate by their inaction, a code of silence in the Cook County State's Attorney's Office, by which prosecutors fail to report and otherwise lie about misconduct committed by police officers and other prosecutors, such as the misconduct at issue in this case.

68. Upon information and belief, Cook County and the Cook County State's Attorney's Office failed to timely act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite the actual knowledge of the same, thereby ratifying the unlawful practices and causing the types of injuries described herein.

69. Upon information and belief, the policies and practices described in the foregoing paragraphs were consciously approved at the highest policy making level for decisions involving the Cook County and the Cook County State's Attorney's Office, and were a proximate cause of the injuries suffered here by plaintiffs.

70. On the basis of the foregoing, the Cook County is liable to plaintiff for his injuries.

**COUNT V - State Law Claim**

***Respondeat Superior***

71. Plaintiff re-alleges paragraphs 1 through 35 as if fully set forth herein.

72. The acts of the defendant detectives described in the state claims specified above, were willful and wanton, and committed in the scope of their employment. Therefore, as the principal, the Defendant CITY OF CICERO is liable for its agents' actions under the doctrine of *respondeat superior*.

73. The acts of the defendant JOYCE described in the state claims specified above, were willful and wanton, and committed in the scope of his employment. Therefore, as the principal, the Defendant COOK COUNTY is liable for its agent's actions under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff demands judgments against the CITY OF CICERO and COOK COUNTY, and such other and additional relief that this Honorable Court deems just and equitable.

## Count VI - State Law Claim

## Indemnification

74. Plaintiff re-alleges paragraphs 1 through 35 as if fully set forth herein.
75. At all relevant time period, defendant detectives were employees of Defendant CITY OF CICERO.
76. At all relevant time period, defendant JOYCE was and is an employee of Defendant COOK COUNTY.
77. The above-described acts of defendants were willful and wanton.
78. The above-described acts of Defendants were committed in the scope of their respective employment.
79. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant CITY OF CICERO is liable for any judgments in this case arising from the actions of defendant detectives.
80. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant COOK COUNTY is liable for any judgments in this case arising from the actions of defendant JOYCE.

WHEREFORE, Plaintiffs ask that this Honorable Court order Defendant CITY OF CICERO to indemnify defendant detectives for any judgment entered in this case arising from the actions of defendant detectives and order Defendant COOK COUNTY to indemnify defendant JOYCE for any judgment entered in this case arising from the actions of defendant JOYCE.

## Jury Demand

81. Plaintiff, Luis Roldan demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

______________________
SAMUEL SHIM

Law Office of Samuel Shim
Samuel Shim
Hyo Jung Kim
Attorneys for Plaintiffs
3501 Algonquin Rd. Suite 600
Rolling Meadows, IL 60008
(847) 427-0033
Email: sshim.law@gmail.com