# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LUIS ROLDAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-3707 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| TOWN OF CICERO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the motion to dismiss [25] filed by Assistant State's Attorney Paul Joyce and the County of Cook (together, the "Cook County Defendants") and the motion to dismiss [28] filed by the Town of Cicero, Detective Jason Stroud, Detective John Savage, Detective Eduardo Zamora, Detective Alfred Auriemma, and Detective Attilio Fiordirosa (together, the "Town Defendants"). For the reasons set forth below, Defendants' motions to dismiss [25; 28] are granted. To the extent Plaintiff's claims are dismissed without prejudice, Plaintiff is given until April 27, 2018 to file an amended complaint, if Plaintiff believes he can cure the deficiencies identified below. The case is set for status on May 2, 2018 at 9:00 a.m.

## I. Background[1]

On March 6, 2011, Plaintiff Luis Roldan was arrested by officers of the Cicero Police Department and was later charged with three counts of criminal sexual assault of J.T. [1, at ¶ 16.] On the night of March 6, 2011, Plaintiff arrived at the home of his friend's aunt, where his friend Abraham Ramos and other individuals—including J.T.—had been drinking vodka. *Id*. at

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

¶¶ 20-22.  Plaintiff brought some orange juice, which the group used to make mixed drinks.  *Id*. at ¶ 22.  After the group played some drinking games, *id*., Plaintiff, Ramos, J.T., and one of J.T.'s friends went to Walgreens to get some more orange juice.  *Id*. at ¶ 23.  Plaintiff and J.T. kissed inside of the Walgreens.  *Id*. at ¶ 24.  J.T. then got into an argument with Ramos outside of the Walgreens.  *Id*.  Plaintiff alleges that after this fight, J.T. asked him to have sex with her, and they had sex in his car.  *Id*. at ¶ 25.  J.T.'s friends testified that she seemed fine when they subsequently returned to the home of Ramos's aunt.  *Id*. at ¶ 26.  J.T. even made a video with one of her friends to post on Facebook.  *Id*. at ¶ 26.  The video indicated that J.T. was able to respond to her friend's questions and to walk without difficulty.  *Id*.  J.T. later had sex with Ramos in a bathroom.  *Id*. at ¶ 28.  Ramos testified that the sex was consensual.  *Id*.  After J.T. left the bathroom, she went to lie down in a bed in the home.  *Id*. at ¶ 29.  Her parents found her a few minutes later—apparently unconscious and wearing boy's pants—after they were contacted by parents of one of J.T.'s friends.[2]

Plaintiff and Ramos were charged with three counts of criminal sexual assault, on the theory that J.T. was so intoxicated as to render her unable to willingly consent.  J.T. testified that it was her first time drinking.  *People v. Ramos*, 2016 WL 634864, at *1 (Ill. App. Ct. Feb. 16, 2016).[3]  J.T. also testified that she did not remember anything after she fought with Ramos outside of the Walgreens.  *Id*. at ¶ 31.

---

[2] The complaint does not contain any allegations regarding why J.T.'s parents showed up at the house of Ramos's aunt.  This fact comes from the state-court decision overturning Plaintiff's conviction.  See *People v. Ramos*, 2016 WL 634864, at *1 (Ill. App. Ct. Feb. 16, 2016).  This fact is not relevant to the Court's analysis and only is provided as background.

[3] The Court can take judicial notice of the fact that testimony was given, as described in the state court decision reversing Plaintiff's conviction.  *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) (holding that district court properly took judicial notice of the fact that documents existed, said what they said, and had legal consequences, but did not rely on the documents as proof of disputed facts in any other sense); see also *Fed. Deposit Ins., Corp. v. FBOP Corp.*, 252 F. Supp. 3d 664, 706 (N.D. Ill. 2017) ("The Court may only take

On January 7, 2013, after a bench trial, Plaintiff and Ramos were both found guilty of criminal sexual assault. *Id*. at ¶ 32. The Illinois Appellate Court reversed both Plaintiff's and Ramos's convictions, finding that the state presented insufficient evidence to prove their guilt beyond a reasonable doubt. *Id*. at ¶¶ 33-31.

On May 17, 2017, Plaintiff brought suit against Defendants under § 1983. Plaintiff alleges, upon information and belief, that J.T. had requested Assistant State's Attorney Paul Joyce and/or another assistant state's attorney for assistance in obtaining a U-Visa, which provides temporary legal status and work eligibility in the United States for a period of four years. *Id*. at ¶ 39. Plaintiff further alleges that Defendant Joyce, Detective Jason Stroud, Detective John Savage, Detective Eduardo Zamora, Detective Alfred Auriemma, and Detective Attilio Fiordirosa all knew about this request but failed to disclose it to the judge or the defense attorneys. *Id*. at ¶¶ 39-42. Plaintiff purports to bring (1) a § 1983 claim for deprivation of his right to a fair trial and for wrongful conviction, (2) a Fourth and Fourteenth Amendment claim for malicious prosecution, (3) a *Monell* Claim against the Town of Cicero, (4) a *Monell* Claim against Cook County, and (5) state law claims. Before the Court are the motions to dismiss filed by the Cook County Defendants [25] and the Town Defendants [28].

## II.     Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

judicial notice of the indisputable fact that the testimony was given and says what it says." (citing *Indep. Tr. Corp.*, 665 F.3d at 943)).

555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at \*2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

III.   **Analysis**

As a preliminary matter, there appears to be some confusion among the parties as to what claims are raised by Plaintiff. Plaintiff brings claims titled "Deprivation of Right to Fair Trial and for Wrongful Conviction" (Count I), and "Fourth and Fourteenth Amendment Claim for Malicious Prosecution" (Count II). Defendant Joyce argues that Count I of the complaint should be dismissed for failure to state a claim, asserting that there is no cause of action for "wrongful

conviction." All the individual Defendants argue that Count II of the complaint should be dismissed, as the Seventh Circuit presently does not recognize a federal claim for malicious prosecution.

With respect to Count I, Plaintiff responds that he sufficiently has alleged a wrongful conviction claim because the complaint alleges that Defendants failed to disclose material as required by *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), violating Plaintiff's right to a fair trial. *Rabe v. United Airlines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011). Thus, regardless of how Count I is titled, Plaintiff alleges facts indicating that he seeks to bring a due process claim based on Defendants' alleged failure to disclose information as required by *Brady* and *Giglio*.

With respect to Count II, Plaintiff argues that because of the Supreme Court's decision in *Manuel v. City of Joliet, Illinois et al.*, 137 S.Ct. 911 (2017), federal claims for malicious prosecution are now viable in the Seventh Circuit. Before *Manuel*, Seventh Circuit precedent held that pretrial detention following the start of the legal process could not give rise to a Fourth Amendment claim. *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001). Although such claims could be brought under the Fourteenth Amendment's Due Process Clause, a plaintiff bringing such a due process claim would have to show that state law failed to provide an adequate remedy. *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010). The availability of a state-law claim for malicious prosecution foreclosed such a finding. *Id*. In *Manuel*, the Supreme Court held that "pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of the legal process in a criminal case." 137 S.Ct. at 918. However, the Supreme Court did not hold that there is a federal claim for malicious prosecution. Rather, the Supreme Court remanded the case to the Seventh Circuit to determine the elements

5

of, or rules applicable to, a Fourth Amendment claim challenging pretrial detention after the start of the legal process. *Id*. at 922. Contrary to Plaintiff's position, the Seventh Circuit has concluded that "nothing in *Manuel* changed the general rule that the federal constitution does not codify state tort law." *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018). In any event, the fact that Plaintiff has used the terminology "malicious prosecution" is of no moment. What matters is whether Plaintiff has identified the constitutional right at issue. Based on the allegations in the complaint, it appears Plaintiff is seeking to bring a Fourth Amendment claim challenging his arrest and continued detention.

In addition to the claims raised in Counts I and II against the individual Defendants, Plaintiff also brings *Monell* claims (Counts III and IV) and state-law claims (Counts V and VI) against the Town of Cicero and Cook County. The Court addresses the arguments raised for dismissing each of these claims in turn.

### A. Constitutional Claims

#### 1. *Due Process Claim (Count I)*

The Fourteenth Amendment's Due Process Clause is the relevant constitutional source for Plaintiff's claim that Defendants violated his right to a fair trial by failing to disclose the fact that J.T. requested the assistance of Defendant Joyce or another ASA in completing her application for a U-Visa. [1, at ¶ 39.] *Brady* requires that the prosecution disclose exculpatory evidence if it is both favorable and material to the defense. 373 U.S. at 87. *Giglio* expanded the *Brady* rule to include impeachment evidence. 405 U.S. at 155. The Supreme Court "explained in *Giglio* that when the government has entered into an agreement or understanding with a key witness regarding his prosecution, the credibility of the witness is at issue and failure to disclose details of the deal may deny the accused due process." *Collier v. Davis*, 301 F.3d 843, 848 (7th

Cir. 2002) (citing *Giglio*, 405 U.S. at 155). To establish a *Brady* violation, Plaintiff must allege facts sufficient to establish that (1) there was an agreement or an understanding, (2) the prosecution suppressed the evidence, (3) the evidence was favorable (*i.e.* exculpatory or impeaching), and (4) the evidence was material to his defense. *Id.* The Town Defendants argue that Plaintiff fails to allege facts sufficient to establish the first prong of his *Brady* claim—the existence of an agreement or an understanding.

A witness's "general and hopeful expectation of leniency is not enough to create an agreement or an understanding." *Id.* at 849 (citing *United States v. Baskes*, 649 F.2d 471, 477 (7th Cir. 1980)). Here, Plaintiff does not allege that any party ever agreed to assist J.T. in obtaining a U-Visa. Even if J.T. had a unilateral expectance that she would receive assistance— a fact not even alleged by Plaintiff—this would not be enough to establish the agreement or understanding prong of *Brady*. Thus, Plaintiff fails to state a claim under *Brady* and *Giglio*.

Although Defendant Joyce did not raise this argument, where one defendant successfully challenges a claim on a ground common to several defendants, the Court has inherent authority to dispose of the claim with respect to other defendants if the plaintiff had an adequate opportunity to respond. *Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000) ("[W]e have stated that where one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition." (citing *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986))). The Court exercises that authority here and dismisses Plaintiff's *Brady/Giglio* claim (Count I) against all Defendants without prejudice.[4]

---

[4] Defendant Joyce argues that Plaintiff fails to allege sufficient facts to establish a *Brady/Giglio* violation against him because Plaintiff does not allege that Defendant Joyce was the ASA from whom J.T. requested assistance.

Portions of Plaintiff's complaint and Plaintiff's response to Defendants' motions to dismiss indicate that he also is seeking to bring a due process claim alleging that Defendants violated his constitutional rights by fabricating evidence against him, resulting in his wrongful conviction.[5]  For example, Plaintiff accuses Defendants of "coercing, constructing, altering, manipulating and fabricating evidence [that] formed the basis for [his] charging, prosecution and conviction." [1, at ¶ 37.]  Plaintiff further alleges that Defendants wrote false reports, gave false testimony, and gave "a false and incomplete version of events to prosecutors."  *Id*.  In their motion to dismiss, the Town Defendants argue that these conclusory allegations are insufficient to establish any misconduct.  Plaintiff responds that his allegation that Defendants failed to disclose the fact that J.T. requested assistance with a U-Visa application establishes that the Town Defendants gave a false and incomplete version of events to prosecutors.  [31, at 4.]  This allegation is insufficient to establish that Defendants ***fabricated*** any evidence.  Even when a plaintiff alleges that an officer coerced a witness to give an incriminating statement, that is not enough to establish that the officer fabricated evidence thereby violating the convicted person's due process rights.  *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017).  "Because coerced testimony may in fact be true, the due-process right to a fair trial isn't implicated absent a violation of the *Brady* duty to disclose facts about the coercive tactics used to obtain it."  *Id*.  Plaintiff does not allege that Defendants coerced J.T. in any manner.  Nor does Plaintiff allege

---

However, Plaintiff alleges that Defendant Joyce knew of the request.  [1, at ¶ 41.]  Plaintiff argues that it is the failure to disclose that request—regardless of whether it was made to Defendant Joyce or another ASA—that violated *Brady* and *Giglio*.  Thus, the fact that the request may have been made to another ASA does not defeat Plaintiff's *Brady/Giglio* claim.

[5] Related to the contention that Defendants fabricated evidence against Plaintiff is the contention that the detective Defendants arrested Plaintiff without probable cause.  [1, at ¶ 38.]  The Town Defendants argued that Plaintiff's allegations regarding a lack of probable cause were too conclusory to survive a motion to dismiss.  Plaintiff only responded to this argument as it relates to his Fourth Amendment claim.  As discussed below, with respect to Plaintiff's Fourth Amendment claim, Plaintiff fails to allege facts sufficient to establish that the defendant Detectives arrested him without probable cause.

8

other facts establishing that Defendants fabricated evidence. Thus, Plaintiff fails to state a due process claim on that basis.

### 2. Fourth Amendment and Fourteenth Amendment Claim (Count II)

The Fourth Amendment is the relevant constitutional source for Plaintiff's claim that he was arrested and prosecuted without probable cause. The Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, see *Bailey v. United States*, 568 U.S. 186, 192 (2013), "prohibits government officials from detaining a person in the absence of probable cause," *Manuel v. City of Joliet*, 137 S. Ct. 911, 918 (2017). "[P]robable cause for an arrest exists 'if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime.'" *United States v. Sands*, 815 F.3d 1057, 1062 (7th Cir. 2015) (quoting *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013)). Furthermore, "*Manuel* teaches that pretrial detention unsupported by any probable cause—for example, where, as in *Manuel*, the only basis for the plaintiff's detention was fabricated evidence—violates the Fourth Amendment." *Chachere v. City of Chicago*, 2018 WL 1087643, at *7 (N.D. Ill. Feb. 28, 2018). Plaintiff bears the burden of establishing that Defendants lacked probable cause. *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009) ("In this circuit the allocation of the burden of persuasion in a § 1983 case claiming a Fourth Amendment violation is clear: a plaintiff claiming that he was arrested without probable cause carries the burden of establishing the absence of probable cause." (citations omitted)).

Here, Plaintiff alleges:

Defendants, despite knowing that probable cause did not exist to arrest and prosecute plaintiff for the alleged assault on J.T., acted individually and in concert to cause [Plaintiff] to be arrested and prosecuted for that crime, thereby violating plaintiff's right pursuant to the Fourth and Fourteenth Amendments of the United

States Constitution to be free of unreasonable searches and seizures and to due process.

[1, at ¶ 45.]   Such conclusory allegations are insufficient to state a Fourth Amendment claim against Defendants.[6]  See *Daniels v. Southfort*, 6 F.3d 482, 484-85 (7th Cir. 1993) (holding that plaintiff's allegation that defendants "searched and arrested the plaintiff without probable cause and without any justification, for the purpose [of] harassing the plaintiff and inflicting summary punishment upon the plaintiff" were too vague to state a claim); *Sherrod v. Travis*, 2013 WL 593955, at *4 (N.D. Ill. Feb. 15, 2013) (conclusory allegations that defendants arrested plaintiff being fully aware that there was no probable cause, reported false allegations of criminal conduct, and distorted the contents of a phone conversation were insufficient to state a Fourth Amendment claim).

Although it is true that the fact-finder must determine whether probable cause exists if there is "room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1013-14 (7th Cir. 2006) (citing *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)), Plaintiff nonetheless bears the initial burden of alleging facts sufficient to show that Defendants lacked probable cause.   Although the complaint includes allegations regarding the facts adduced by the prosecution at trial, Plaintiff does not allege what facts were known to Defendants at the time of his arrest or at other relevant times.  Plaintiff cannot establish a Fourth Amendment claim by merely asserting that he was arrested and detained without probable cause.  *Neita v. Travis*, 2015 WL 394117, at *3 (N.D. Ill. Jan. 29, 2015) (dismissing Fourth Amendment claim where Plaintiff

---

[6] Plaintiff alleges that Defendants fabricated evidence as part of his claim that he was deprived his due process right to a fair trial.  [1, at ¶ 37.]  To the extent Plaintiff seeks to challenge his arrest and pretrial detention on that basis, pursuant to *Manuel*, such a claim would be viable under the Fourth Amendment.  However, because Plaintiff has not alleged facts establishing that Defendants fabricated evidence, as discussed with respect to Count I, the Court need not consider this argument as part of Plaintiff's Fourth Amendment claim at this time.

"omitted any factual allegations about the facts and circumstances known to defendants at the time of" plaintiff's arrest).

To the extent Plaintiff seeks to establish a lack of probable cause based on the state court's finding that the state presented insufficient evidence to prove Plaintiff guilty beyond a reasonable doubt, such an argument is foreclosed by Seventh Circuit precedent. *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002) ("An officer's belief in the existence of probable cause 'need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false.'" (quoting *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000)). Thus, Plaintiff fails to allege sufficient facts to establish his Fourth Amendment claim. Count II of the complaint therefore is dismissed with leave to replead.

The Court notes the possibility that Plaintiff's false arrest claim may be barred by the statute of limitations. In *Wallace v. Kato*, the Supreme Court noted that the statute of limitations for § 1983 false arrest claims in Illinois is two years, 549 U.S. 384, 387 (2007), and held that the statute of limitations begins to run when legal process is initiated against the arrested person. *Id*. at 390. The complaint alleges that Plaintiff was charged on March 6, 2011. [1, at ¶ 16.] Thus, to the extent that Plaintiff is bringing a false arrest claim, such a claim may be barred by the statute of limitations, unless there is some ground for tolling the limitation period. However, because the Court is dismissing Count II without prejudice to replead, the Court declines to address the statute of limitations issue at this time without the benefit of an a potential amended complaint followed by full briefing on the issue.

**B.**     *Monell* **Claim Against Town of Cicero (Count III)**

In order to bring a § 1983 claim against a municipality pursuant to *Monell v. New York*

*Department of Social Services*, 436 U.S. 658 (1978), a plaintiff must allege facts establishing that

his constitutional rights were violated.  *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir.

2014).  Because Plaintiff's underlying constitutional claims (Counts I and II) fail, Plaintiff's

*Monell* claim against the Town also fails.  Accordingly, Count III is dismissed without prejudice.

**C.**     *Monell* **Claim Against Cook County (Count IV)**

Defendant Cook County moves to dismiss Count IV of the complaint, a *Monell* claim

against Defendant County, on the basis that an Illinois county cannot be held liable under § 1983

for actions of State's Attorneys, as they are independently elected state, not county, officials.

Plaintiff concedes that his claim against Cook County should be dismissed.  [31, at 13.].

Plaintiff seeks leave to amend the complaint to add the Cook County State's Attorney's

Office and Anita Alvarez, the former Cook County State's Attorney, in her official capacity, as

defendants in this case.  *Id.*  Plaintiff then indicates that Cook County should not be dismissed

from this action because Cook County will be a necessary party once the Cook County State's

Attorney's Office and Anita Alvarez are joined.  See *Askew v. Sheriff of Cook County, Illinois*,

568 F.3d 632, 636 (7th Cir. 2009) (holding that Cook County was a necessary party to a lawsuit

against the Sheriff of Cook County).

Defendant Cook County responds that the Court should not allow Plaintiff to amend its

complaint to add claims against the Cook County State's Attorney's Office or Anita Alvarez in

her official capacity, arguing that any such claims would be barred by the Eleventh Amendment.

"The Eleventh Amendment prohibits courts from deciding suits brought by private litigants

against states or their agencies." *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994).  In

*Garcia*, the Seventh Circuit noted that the Illinois Supreme Court has held that state's attorneys are state officials. *Id*. (citing *Ingemunson v. Hedges*, 549 N.E.2d 1269, 1272 (Ill. 1990)). Furthermore, "[a] suit against an official in her official capacity is equivalent to a suit against the agency she represents." *Offor v. Ill. Dep't of Human Servs.*, 2013 WL 170000, at *3 (N.D. Ill. Jan. 16, 2013). Thus, Plaintiff's request to amend the complaint to add a *Monell* claim against the Cook County State's Attorney's Office and Anita Alvarez in her official capacity is denied, as such an amendment would be futile. Count IV is dismissed with prejudice.

### D.    Prosecutorial Immunity

Plaintiff alleges that Defendant Joyce deprived him of the right to a fair trial and wrongfully convicted him of sexual assault by withholding exculpatory evidence, namely that J.T. asked Defendant Joyce or another ASA for help obtaining a U-Visa, in violation of *Brady* and *Giglio*. [1, at ¶¶ 36-43.] "Prosecutors are absolutely immune from liability for damages under § 1983 for conduct that is functionally prosecutorial; this immunity is understood to broadly cover all conduct associated with the judicial phase of the criminal process." *Bianchi v. McQueen*, 818 F.3d 309, 316 (7th Cir. 2016) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 341-43 (2009); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). "Where a litigant presents a due process claim—*Brady*, *Giglio*, or otherwise—the question of immunity turns on the capacity or function that the prosecutor was performing at the time of the alleged wrongful conduct." *Whitlock v. Brueggemann*, 682 F.3d 567, 579-80 (7th Cir. 2012). Thus, "a showing that a prosecutor investigated and fabricated evidence against a target would automatically defeat absolute prosecutorial immunity, even if that target was later brought to trial." *Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012).

Plaintiff argues that "[t]he germane allegations against [Defendant] Joyce stem from the complaining witness in the underlying criminal case asking [Defendant] Joyce and other law enforcement officials for their assistance in applying for and obtaining a U-Visa in return for assisting them in prosecuting the plaintiff." [31, at 6.]. According to Plaintiff, "Defendant Joyce rendering assistance to the complaining witness in that regard had nothing to do with the prosecutor's function in prosecuting in a criminal case." [31, at 6.]. However, Plaintiff does not actually allege that Defendant Joyce ever provided J.T. with assistance in applying or obtaining a U-Visa. In fact, Plaintiff recognizes that J.T. may have requested assistance from a different ASA. Plaintiff alleges that J.T. had requested Defendant Joyce "***and/or another assistant state's attorney*** for their assistance in obtaining a U-Visa." [1, at ¶ 39 (emphasis added).]

Even if Plaintiff had alleged that Defendant Joyce provided J.T. with assistance in applying for or obtaining a U-Visa, Plaintiff does not contend that this conduct itself violated his constitutional rights. Rather, Plaintiff contends it was Defendant Joyce's failure to disclose this conduct that violated his constitutional rights. Because "*Brady* and *Giglio* obligations are functionally prosecutorial," *Whitlock v. Brueggemann*, 682 F.3d 567, 579 (7th Cir. 2012), prosecutors are absolutely immune from *Brady* and *Giglio* claims that they suppressed evidence. *Harris v. City of Chicago*, 2015 WL 1331101, at *6 (N.D. Ill. Mar. 19, 2015) ("Defendant ASAs would also be immune to any *Brady* claims that they suppressed exculpatory evidence.").

When courts have concluded that a prosecutor may not invoke prosecutorial immunity with respect to a *Brady* or *Giglio* violation, it is when the prosecutor earlier played a role in fabricating evidence against the defendant. See, *e.g., Saunders v. City of Chicago*, 2013 WL 6009933, at *9 (N.D. Ill. Nov. 13, 2013), on reconsideration in part, 2014 WL 3535723 (N.D. Ill. July 11, 2014) (denying motion to dismiss on prosecutorial immunity grounds where

14

defendants alleged "that the ASAs acted in concert with [d]efendant [o]fficers in their investigation and interrogation of the [p]laintiffs, in coercing and fabricating [p]laintiffs' confessions, and in coercing and fabricating incriminatory statements from other witnesses"). As discussed above, although Plaintiff alleges that Defendants fabricated evidence, Plaintiff does not allege any facts establishing this conclusory allegation. This case therefore is unlike cases where the alleged misconduct occurred while the prosecutor was acting in an investigative capacity before he had probable cause for arrest. *Cf. Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74 (1993) ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973)); *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("A prosecutor cannot retroactively immunize himself from conduct by perfecting his wrong-doing through introducing the fabricated evidence at trial and arguing that the tort was not completed until a time at which he had acquired absolute immunity.").

Plaintiff readily admits that Defendant Joyce is "employed by the Cook County State's Attorney's Office as an Assistant State's Attorney" and that Defendant Joyce acted as a prosecutor in Plaintiff's criminal case. [1, at ¶¶ 10, 18.] Because the alleged *Brady/Giglio* violation relates to conduct that is functionally prosecutorial, Plaintiff's claims against Defendant Joyce are barred by absolute prosecutorial immunity. Thus, Plaintiff's Claims against Defendant Joyce (Counts I and II) are dismissed.

### E. State Law Claims

Because the Court is dismissing Plaintiff's federal claims, the Court also dismisses Plaintiff's state law claims without prejudice. "The usual practice in this circuit is for district

15

courts to 'dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.'" *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)); see also *Al's Service Center v. BP Products North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims, which the plaintiff can then prosecute in state court.") (citations omitted); *Curry v. Advocate Bethany Hosp.*, 204 F. App'x 553, 558 (7th Cir. 2006) ("The district court properly dismissed the pendant state-law tort claims without prejudice because the federal claims were dismissed at screening.") (citing 28 U.S.C. § 1367(c); *East–Miller v. Lake County Highway Dep't*, 421 F.3d 558, 564–65 (7th Cir. 2005)).

## F.    Request to Strike

Finally, in the alternative to dismissing Plaintiff's claims, the Town Defendants request that the Court strike Plaintiff's prayer for punitive damages and Plaintiff's references to a conspiracy. Plaintiff failed to respond to these arguments, but they appear to have merit. "As a general rule, local public entities are immune from punitive damage awards in civil rights actions." *Kolar v. Sangamon Cty. of State of Ill.*, 756 F.2d 564, 567 (7th Cir. 1985) (citations omitted). Furthermore, in order to establish a conspiracy, a plaintiff must "plead the parties, general purpose, and approximate dates of the conspiracy to give the defendant notice of the claim." *Sellers v. Daniels*, 242 F. App'x 363, 364 (7th Cir. 2007) (citation omitted). Because the Court is dismissing Plaintiff's claims, however, the Court need not rule on the Town Defendant's request to strike.

## IV.    Conclusion

For the reasons explained above, Defendants' motions to dismiss [25; 28] are granted. To the extent Plaintiff's claims are not dismissed with prejudice, Plaintiff is given until April 27, 2018 to file an amended complaint, if Plaintiff believes he can cure the deficiencies identified above.   The case is set for status on May 2, 2018 at 9:00 a.m.


Dated: March 26, 2018

_____
Robert M. Dow, Jr.
United States District Judge