**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUIS ROLDAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-3707 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| TOWN OF CICERO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion to dismiss [41] filed by Defendants the Town of Cicero, Detective Alfred Auriemma, Detective Attilio Fiordirosa, Detective John Savage, Detective Jason Stroud, and Detective Eduardo Zamora. For the reasons set forth below, the motion to dismiss [41] is granted in part and denied in part. This case is set for further status hearing on April 17, 2019 at 9:00 a.m.

**I.     Background[1]**

Plaintiff Luis Roldan brings this Section 1983 lawsuit against Defendants for alleged constitutional violations that Plaintiff contends resulted in him being wrongfully convicted and sentenced to eight years in prison for criminal sexual assault. [36, at ¶¶ 1-2.] In response to a call about a juvenile female under the influence of alcohol, the Cicero Police Department arrived at a home in Cicero at approximately 10:59 p.m. on March 6, 2011. [*Id*. at ¶ 29.] Isamar Baez, who lived at the residence, told Officer Savaglio that a person named "Luis" was involved in an incident

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

[*id*. at ¶ 30], but there are no allegations regarding the substance of the incident referenced by Baez. The Cicero Fire Department also arrived at the residence at approximately 11:24 p.m. on March 6, 2011. [*Id*. at ¶ 16.] No allegations of sexual assault were made to the Cicero Fire Department. [*Id*. at ¶ 18.] Paramedics found J.T. lying on a bed and were told by J.T.'s family members that she had been drinking alcohol with her friends. [*Id*. at ¶ 17.] J.T. admitted that she had been drinking vodka but denied using any drugs. [*Id*. at ¶¶ 19, 21.] J.T. was belligerent and was swearing at her parents as she was taken away by paramedics. [*Id*. at ¶ 22.] Paramedics noted the absence of any signs of trauma. [*Id*. at ¶ 20.] When J.T. arrived at the hospital, she told hospital personnel that she could not remember what had happened. [*Id*. at ¶ 23.] Although J.T. could not remember if she had sexual intercourse, she denied being sexually active. [*Id*. at ¶ 24.] J.T.'s mother requested that a sexual assault kit be performed on J.T.; no wounds were noted on J.T. during the exam. [*Id*. at ¶¶ 27-28.]

On the night of March 6, 2011, Plaintiff was arrested and brought to the Cicero Police Department. [*Id*. at ¶ 35.] At the time of Plaintiff's arrest, the arresting officers (1) did not have a warrant authorizing the arrest of Plaintiff, (2) did not believe that a warrant authorizing the arrest of Plaintiff existed, (3) had not observed Plaintiff commit any criminal offense, and (4) had not received any information from any source indicating that Plaintiff had committed any criminal offense relating to J.T. [*Id*. at ¶¶ 66-69.] According to Plaintiff, after his arrest, the arresting officers and other members of the Cicero Police Department, including the named detective Defendants, conspired to fabricate a story in an attempt to justify the unlawful arrest, and to cause Plaintiff to be wrongfully detained and prosecuted for criminal sexual assault. [*Id*. at ¶ 70.]

Plaintiff further alleges that Defendants conspired to help J.T. and her family obtain a U-visa—a temporary visa issued by the United States Citizenship and Immigration Services

providing temporary legal status and eligibility to work in the United States for up to four years—in exchange for J.T.'s false testimony against Plaintiff. [*Id*. at ¶¶ 60, 83-84.] Specifically, Defendants agreed to provide J.T. with a certification of J.T's status as a victim of a qualifying crime that would allow J.T. and her family to apply for a U-visa. [*Id*. at ¶¶ 79-84.] Defendants failed to disclose this agreement to Plaintiff. [*Id*. at ¶ 95.]

On January 7, 2013, Plaintiff was found guilty of criminal sexual assault of J.T and was sentenced to 8 years in prison.[2] [*Id*. at ¶ 52.] On September 14, 2015, the Illinois Appellate Court reversed Plaintiff's conviction for criminal sexual assault and issued the mandate on November 13, 2015. [*Id*. at ¶ 53.] The Appellate Court concluded that the evidence presented at trial was insufficient to prove Plaintiff's guilt beyond a reasonable doubt. [*Id*. at ¶ 55.] In his amended complaint, Plaintiff purports to bring (1) a § 1983 claim for detaining Plaintiff without probable cause in violation of the Fourth Amendment, (2) a § 1983 claim for failing to disclose the agreement between J.T. and Defendants in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), (3) a *Monell* Claim against the Town of Cicero, and (4) various state law claims. Before the Court is Defendants' motion to dismiss the amended complaint [41].

## II.    Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

---

[2] Abraham Ramos also was convicted of criminal sexual assault of J.T. Because Ramos is not a party to the case, the Court focuses on Plaintiff's allegations with respect to his arrest, prosecution, and conviction.

3

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

III. Analysis

A. **Fourth Amendment Claim**

Defendants move to dismiss Plaintiff's Fourth Amendment claim (Count I) as time-barred. In *Manuel v. City of Joliet, Illinois (Manuel II)*, the Seventh Circuit held that a plaintiff's Fourth Amendment wrongful detention claim accrues at the end of the detention. 903 F.3d 667, 670 (7th Cir. 2018). Despite this holding, Defendants argue that Plaintiff's Fourth Amendment claim

accrued on the date of conviction (at the latest). Defendants appear to be arguing that because the Fourth Amendment drops out once trial occurs, Plaintiff's Fourth Amendment wrongful detention claim accrued when he was convicted. Plaintiff counters that his entire detention was wrongful. Although the Fourteenth Amendment governs claims for wrongful detention after trial, *Manuel v. City of Joliet, Ill. (Manuel I)*, 137 S. Ct. 911, 920 n.8 (2017) ("[O]nce a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." (citations omitted)), "§ 1983 cannot be used to contest ongoing custody that has been properly authorized." *Manuel II*, 903 F.3d at 670. "The wrong of detention without probable cause continues for the duration of the detention. That's the principal reason why the claim accrues when the detention ends." *Id*. at 670. Plaintiff therefore could not have challenged his continued detention at the time of his conviction and thereafter.[3]

Defendants also argue that Plaintiff has not alleged "any facts or even conclusions that would put Defendants on notice or lead the Court to believe that [Plaintiff] has brought a Fourth Amendment claim for pre-trial detention." [41, at 7.] The Court disagrees. Not only does Plaintiff allege that he was arrested without probable cause, Plaintiff also alleges that "the arresting officers and other members of the Cicero Police Department, including the named detective defendants, conspired and agreed to fabricate a story in an attempt to justify the unlawful arrest, and to cause the plaintiff *to be wrongfully detained and prosecuted*." [36, at ¶ 70 (emphasis added).] In furtherance of this scheme, the arresting officers and detectives:

- Prepared police reports containing false accounts of how and where Plaintiff was placed under arrest;

---

[3] Defendants argue that because a false arrest claim does not necessarily impugn a conviction, such a claim would not be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). However, as discussed below, Plaintiff is challenging his continued detention, not simply his arrest.

5

- Attested to a false account of the circumstances of Plaintiff's arrest through official police reports; and

- Communicated false narratives to the prosecutors, resulting in Plaintiff's wrongful detention.

[*Id*. at ¶ 71.] Furthermore, Plaintiff alleges that in exchange for J.T.'s false testimony against Plaintiff, Defendants agreed to certify J.T.'s status as a victim of one or more crimes that would allow her and her family to obtain a U-visa that would allow them to obtain permanent residency and U.S. citizenship. [*Id*. at ¶¶ 83-84.] Although these allegations are not particularly robust, they plausibly state a Fourth Amendment pretrial detention claim.

Defendants further argue that Plaintiff fails to allege any pretrial detention beyond his initial arrest. However, Plaintiff alleges that he was detained and prosecuted because of Defendants misconduct. [See, *e.g.*, *id*. at ¶¶ 70, 73.] Although Plaintiff admits in his supplemental brief that he was released on bond sometime after his arrest and was taken back into custody on January 7, 2013, this is not alleged in Plaintiff's amended complaint and therefore is not properly before the Court on Defendants' motion to dismiss. Regardless, it is unclear whether a person released on bond remains "seized" for Fourth Amendment purposes. The Seventh Circuit recently declined to decide the issue, concluding that it was unable to do so based on the "state of the record and briefing" before the court on the issue of first impression. *Mitchell v. City of Elgin*, 912 F.3d 1012, 1013 (7th Cir. 2019). In *Mitchell*, the Seventh Circuit recognized that sister circuits have held that "pretrial release might be construed as a 'seizure' for Fourth Amendment purposes if the conditions of that release impose significant restrictions on liberty." *Id*. at 1016. Still, the Seventh Circuit recognized that other circuits have held that "[r]un-of-the-mill conditions of pretrial release do not fit comfortably within the recognized parameters of the term [seizure]." *Mitchell v. City of Elgin*, 912 F.3d 1012, 1016 (7th Cir. 2019) (quoting *Nieves v. McSweeney*, 241 F.3d 46, 55 (1st

Cir. 2001)) (internal quotation marks omitted). Because it was not yet known what conditions of release, if any, were imposed on the plaintiff in *Mitchell*, the Seventh Circuit declined to determine whether a person released on bond remains "seized" for Fourth Amendment purposes. As in *Mitchell*, here too, it is not yet known what conditions of release, if any, were imposed on Plaintiff. In the absence of such information, Plaintiff's claim remains plausible.

Defendants imply that it was Plaintiff's obligation to allege such facts in his complaint, but that misapprehends the pleading obligations under Rule 8. Those facts will be necessary to establish the length of Plaintiff's unjustified detention (which is relevant to the statute of limitations defense), but not to show the fact of his unjustified detention of any duration (which is a necessary element of his Fourth Amendment claim).[4] Plaintiff need not allege facts anticipating and overcoming affirmative defenses. "A limitations defense is not often resolved on a Rule 12(b)(6) motion because 'a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.'" *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) (quoting *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009)). Although "a plaintiff may plead himself out of court if he alleges facts that conclusively demonstrate that his claim is time-barred," *Holly v. Anton*, 97 F. App'x 39, 40 (7th Cir. 2004) (citation omitted), Plaintiff has not done so here. Because it is unclear when Plaintiff's detention ended, the Court is unable to determine whether Plaintiff's Fourth Amendment claim is time-barred.

Defendants also argue that Plaintiff's Fourth Amendment claim fails because Plaintiff admits that he committed a crime—either criminal sexual abuse or aggravated criminal sexual abuse—when he had sex with a minor. In making that argument, Defendants cite to *Williams v.*

---

[4] The Court notes that Defendants also likely have this information in their possession, and Defendants are free to move for summary judgment on this basis, if they believe it to be supported by the facts.

7

*Rodriguez*, which held that when an officer has probable cause to arrest a person for any crime, the person's false arrest claim fails, even if the person was not arrested for the crime for which the officer had probable cause to arrest him. 509 F.3d 392, 399 (7th Cir. 2007). Here, however, Defendants fail to identify any facts known by the arresting officers at the time Plaintiff was arrested that would establish probable cause to arrest Plaintiff. Defendants also fail to identify when the facts establishing probable cause became known. Furthermore, Plaintiff here seeks to bring a Fourth Amendment claim based not merely on his arrest, but also on his continued detention. As the Seventh Circuit has recognized, "probable cause to believe an individual committed one crime—and even his conviction of that crime—does not foreclose a malicious prosecution claim for additionally prosecuting the individual on a separate charge." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (collecting cases). Thus, "a malicious prosecution claim is treated differently from one for false arrest: whereas probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause, probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking."[5] *Id*. (internal citations omitted). The Court therefore denies Defendants' motion to dismiss Plaintiff's Fourth Amendment claim as untimely.

### B. Due Process Claim

The Fourteenth Amendment's Due Process Clause is the relevant constitutional source for Plaintiff's claim that Defendants violated his right to a fair trial by failing to disclose the fact that

---

[5] The Court recognizes that Plaintiff here is not bringing a malicious prosecution claim. However, these cases indicate that the fact that Plaintiff committed one crime does not justify the prosecution and conviction of Plaintiff for a more severe crime. For example, it cannot be the case that a person's constitutional rights are not violated when the government uses false evidence to detain and convict a person of murder, as long as the person committed any other crime that would justify the detention.

8

Defendants agreed to assist J.T. in obtaining a U-visa in return for her false testimony at Plaintiff's trial. [36, at ¶ 85.] *Brady* requires that the prosecution disclose exculpatory evidence if it is both favorable and material to the defense. 373 U.S. at 87. *Giglio* expanded the *Brady* rule to include impeachment evidence. 405 U.S. at 155. The Supreme Court "explained in *Giglio* that when the government has entered into an agreement or understanding with a key witness regarding his prosecution, the credibility of the witness is at issue and failure to disclose details of the deal may deny the accused due process." *Collier v. Davis*, 301 F.3d 843, 848 (7th Cir. 2002) (citing *Giglio*, 405 U.S. at 155). "While most commonly viewed as a prosecutor's duty to disclose to the defense, the duty extends to the police and requires that they similarly turn over exculpatory/impeaching evidence to the prosecutor, thereby triggering the prosecutor's disclosure obligation." *Caraval v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008) (citing *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006)). To establish a *Brady/Giglio* violation, Plaintiff must allege facts sufficient to establish that (1) there was an agreement or an understanding, (2) the prosecution suppressed the evidence, (3) the evidence was favorable (*i.e.*, exculpatory or impeaching), and (4) the evidence was material to his defense. *Collier*, 301 F.3d at 848.

Plaintiff alleges that—in exchange for J.T.'s false testimony against Plaintiff—Defendants agreed to certify J.T.'s status as a victim of one or more crimes that would allow her and her family to obtain a U-visa that would allow them to obtain permanent residency and U.S. citizenship. [36, at ¶¶ 83-84.] Plaintiff also alleges that Defendants conspired and agreed among themselves and with J.T. to sign or cause to be signed a U-visa certification in exchange for J.T.'s false testimony against Plaintiff. [*Id*. at ¶ 85.] Plaintiff contends that Defendants violated *Brady/Giglio* by failing to disclose this favorable evidence to Plaintiff.

Defendants raise a number of arguments as to why the Court should dismiss Plaintiff's *Giglio* claim. First, Defendants argue that Plaintiff fails to allege who supposedly signed the certification. However, as discussed above, Plaintiff alleges that Defendants generally agreed to sign or cause to be signed a U-visa certification in exchange for J.T.'s testimony. If all Defendants were a part of this agreement, and therefore were aware of the agreement, it is of no legal import who actually signed the certification.

Second, Defendants argue that the Court should dismiss Plaintiff's *Giglio* claim because Defendants played no role in deciding who receives U-visas. That decision is made by the United States Citizenship and Immigration Services. 8 C.F.R. 214.14(c)(5). However, this does not mean that Defendants had no role in the certification process. As Defendants acknowledge, local law enforcement agencies do play a role in the certification process. [41, at 9.] Again, although Plaintiff does not allege who participated in the certification process, Plaintiff's *Giglio* claim is based on allegations that Defendants came to an agreement and failed to disclose that agreement to Plaintiff.

Third, Defendants also argue that the Court should dismiss Plaintiff's *Giglio* claim because Plaintiff could not possibly know whether the U-visa was approved given that federal law prohibits the use or disclosure of pending or approved U-visa applications unless certain conditions are met. 8 C.F.R. § 214.14(e)(1). However, it is not clear from the amended complaint whether any of those conditions were met. Regardless, Plaintiff challenges Defendants' agreement to help J.T. in the application process. Defendants do not explain why it is necessary that Plaintiff also allege that Defendants were aware of how the application was processed after they provided assistance to J.T. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's *Giglio* claim.

### C. *Monell* Claim Against Town of Cicero

Defendant Town of Cicero moves to dismiss Plaintiff's claim under *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978), because Plaintiff has not alleged an underlying constitutional injury as needed to support a *Monell* claim. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014); see also *King v. East St. Louis School Dist. 189*, 496 F.3d 812, 817 (7th Cir.2007) ("It is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights."). However, because Counts I and II survive, Plaintiff has alleged an underlying constitutional injury.

### D. State-Law Claims

Defendants move to dismiss Plaintiff's state-law claims as time-barred. "[A] plaintiff is not required to negate an affirmative defense in his complaint * * * [but] if he pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court." *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (citations omitted). Plaintiff concedes that Counts IV (malicious prosecution) and V (intentional infliction of emotional distress) were filed outside the applicable limitations period. Accordingly, Counts IV and V are dismissed.

That leaves Plaintiff's Illinois state-law claim of *respondeat superior* (Count VI) and indemnification (Count VII), brought against Defendant the Town of Cicero. Pursuant to 745 ILCS 10/8-101(a), "[t]he statute of limitations for suits against public employees is one year [.]" *Vaughn v. Chapman*, 662 F. App'x 464, 468 (7th Cir. 2016) (internal citations and quotation marks omitted). This statute of limitations applies to Plaintiff's *respondeat superior* and indemnification claims against Cicero. *Holliman v. Cook Cty.*, 2016 WL 4678312, at *2 (N.D. Ill. Sept. 6, 2016)

(applying 745 ILCS 10/8-101(a) to *respondeat superior* claim and indemnification claim under Illinois law).

The Court grants Cicero's motion to dismiss Plaintiff's *respondeat superior* claim. "Generally, *respondeat superior* claims against an employer accrue at the same time as the claims against the employee tortfeasor." *Huerta v. Vill. of Carol Stream*, 2010 WL 2330361, at *2 (N.D. Ill. June 9, 2010). Plaintiff has not identified any grounds for departing from this general rule. The Illinois Appellate Court reversed Plaintiff's conviction on September 14, 2015 and issued the mandate on November 13, 2015, both more than a year before Plaintiff filed suit. Plaintiff has not identified any other event that he contends triggered the running of the statute of limitations period that occurred within the one-year statute of limitations period. Plaintiff's *respondeat superior* claim therefore is time-barred.

However, the Court denies Cicero's motion to dismiss Plaintiff's indemnification claim. Although Cicero argues that Plaintiff's indemnification claim is dependent on Plaintiff's state-law malicious prosecution and intentional infliction of emotional distress claims, Plaintiff makes clear that his indemnification claim is based on possible Section 1983 liability on the part of other defendants. Plaintiff may bring an indemnification claim under 745 ILCS 10/9-102 based on underlying Section 1983 claims. *Holliman*, 2016 WL 4678312, at *3. Because Plaintiff's Section 1983 claims "are still pending, the statute of limitations on his indemnification claim has not begun to run." *Holliman*, 2016 WL 4678312, at *3. Accordingly, Plaintiff's indemnification claim against Cicero is timely.

### E.     Request to Strike

Defendant Town of Cicero moves to strike the punitive damages claims against it, noting that municipalities are immune from punitive damages. [41, at 4 (citing *Newport v. Fact Concerts,*

*Inc.*, 453 U.S. 247, 259-60 (1981)).] Plaintiff concedes that its punitive damages request applies only to the individual defendants and not Cicero. Accordingly, the Court strikes Plaintiff's request for punitive damages against Cicero.

**IV.    Conclusion**

For the reasons explained above, Defendants' motion to dismiss [41] is granted in part and denied in part. This case is set for further status hearing on April 17, 2019, at 9:00 a.m.

Dated: March 27, 2019

                                                                                                _____
                                                                                                Robert M. Dow, Jr.
                                                                                                United States District Judge