# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

LUIS ROLDAN,

        Plaintiff,

    v.

TOWN OF CICERO, *et al.*,

        Defendants.

No. 17-cv-03707

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

This § 1983 case arising from Plaintiff's arrest and (later vacated) conviction for aggravated sexual assault is now before the Court on Defendants' motion to dismiss Plaintiff's Second Amended Complaint. Plaintiff asserts four claims: (1) a Fourth Amendment claim for pretrial arrest and detention without probable cause; (2) a Fourteenth Amendment claim for violation of Plaintiff's right to due process resulting in his wrongful conviction; (3) a *Monell* claim alleging the Town of Cicero's pattern or practice of violating the constitutional rights resulted in his conviction; and (4) a state-law indemnification claim against the Town. (Dkt. 74.)

Defendants ask the Court, for various reasons, to dismiss all of Plaintiff's claims. Although some of Defendants' current arguments do little more than restate positions the Court previously rejected, others are raised for the first time and have merit. More specifically, Plaintiff's claims against newly-added defendants Walberto Galarza and Frank Savaglio must be dismissed as time-barred. So too must Plaintiff's *Monell* claim be dismissed, as Plaintiff has not adequately alleged a widespread pattern or practice of constitutional violations. Conversely, Plaintiff's Fourth and

Fourteenth Amendment claims against the remaining defendants must be allowed to proceed, for largely the same reasons set forth in this Court's previous opinions. Accordingly, and as explained more fully below, the Court grants in part and denies in part Defendants' motion to dismiss.

## I.    BACKGROUND

Because the Court has set forth the alleged facts in this case in two earlier opinions on motions to dismiss (Dkt. 35, Dkt. 53), this background section will focus on information that is new to the Second Amended Complaint (Dkt. 74). In deciding a motion to dismiss, the Court must "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Calderon-Ramirez v. McCament*, 877 F.3d 272, 274 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). Thus, the following recitation is drawn from the allegations of the Second Amended Complaint, which the Court must accept as true.

On March 6, 2011, Plaintiff Luis Roldan, who was then 21 years old, spent the day playing drinking games and having sex with an underage girl named "J.T." (Dkt. 74 ¶¶ 50, 51, 53, 55.) Plaintiff's hedonic escapade began at a movie theater in Cicero, where Plaintiff, his friend Abraham Ramos, another individual named Yesenia, and J.T. tried to decide on what movie to watch. (*Id.* ¶¶ 47-48.) Failing at that task, the group went to Ramos's aunt's house and began drinking. (*Id.* ¶¶ 48-51.) Soon they ran out of liquor. So the group went to Walgreen's, where Plaintiff and J.T. had sex in Plaintiff's car. (*Id.* ¶¶ 52-53, 55.) After returning to Ramos's aunt's house, J.T. and Ramos had sex as well. (*Id.* ¶ 58.) Soon afterwards, J.T.'s parents arrived at the home

and found their daughter, who was apparently unconscious. (*Id.* ¶ 59.) J.T.'s parents then called the police. (*Id.*)

Sergeant Frank Savaglio and Detective Walberto Galarza of the Cicero Police Department responded. (*Id.* ¶¶ 29, 35.) After a brief investigation that included questioning Plaintiff and another witness who was present in the neighborhood, one of the officers—Plaintiff does not allege who—arrested Plaintiff. (*Id.* ¶¶ 30-41.) Back at the police station, Detectives Eduardo Zamora and Alfred Auriemma interviewed J.T., who told them she did not remember anything after going to the movie theater. (*Id.* ¶ 42.)[1] J.T. also told medical personnel that she remembered drinking, but that she was not sexually active and did not recall having sexual intercourse that day. (*Id.* ¶¶ 23-25.) Medical personnel noted the absence of any signs of trauma or defense wounds. (*Id.* ¶¶ 20, 28.) Despite this lack of evidence, Plaintiff and Ramos were charged with criminal sexual assault. (*Id.* ¶¶ 46, 61.)

Plaintiff says Defendants, lacking a warrant or probable cause, conspired to press a criminal sexual assault case against Plaintiff by fabricating evidence against him. (*Id.* ¶¶ 75-80.) Defendants "prepared police reports containing false account [*sic*] of how and where plaintiff was placed under arrest" and "communicated the false narrative to the prosecutors which resulted in plaintiff's wrongful detention and prosecution for the crime he did not commit." (*Id.* ¶ 80; *see also id.* ¶¶ 88, 91 (alleging Defendants "used the fabricated evidence against the plaintiff" including "falsified"

---

[1] Detectives John Savage, Jason Stroud, and Attilio Fiordirosa are named as individual defendants in the caption of the complaint, but no allegations are made against them specifically. These defendants have not, however, brought any motion to dismiss separate from Defendants' joint motion.

police reports).) Further, to secure J.T.'s testimony, Defendants entered "an agreement or an understanding between [Defendants] and J.T. and her family whereby the defendants agreed to certify to the [United States Customs and Immigration Services] J.T.'s status as a victim . . . to qualify her as a victim" for the purposes of obtaining a U-Visa. (*Id*. ¶ 97.) According to Plaintiff, a U-Visa would have permitted J.T. to remain in the United States. (*Id*.) Defendants, however, failed to disclose that agreement to Plaintiff before or during his criminal trial. (*Id*. ¶ 108.)

After a bench trial, Plaintiff and Ramos were found guilty and sentenced to, respectively, 8 and 12 years of incarceration. (*Id*. ¶ 61.) On September 14, 2015, the Illinois Appellate Court reversed Plaintiff's conviction and held the evidence presented at trial was insufficient to prove Plaintiff's guilt beyond a reasonable doubt. (*Id*. ¶¶ 62, 64.) Five months later, the same court reached the same result as to Ramos. (*Id*. ¶ 63.)

## II. PROCEDURAL HISTORY

On May 17, 2017, Plaintiff, who was incarcerated for three years before his sexual assault conviction was overturned on appeal, filed this action against eight defendants—four individual officers, the Town of Cicero, Cook County, and an Assistant State's Attorney. (Dkt. 1.) Plaintiff alleged that the officers arrested him without probable cause in violation of Plaintiff's Fourth Amendment rights. (*Id*. ¶ 45.) Plaintiff also alleged that that he was wrongfully convicted because Defendants concealed *Brady/Giglio* material[2] in violation of Plaintiff's Fourteenth Amendment

---

[2] *See* Dkt. 35 at 6-7 for further background regarding *Brady* and *Giglio*.

right to due process. (*Id*. ¶¶ 2-3.) Specifically, Plaintiff alleged Defendants failed to disclose that J.T. believed, based on Defendants' representations, that she would receive assistance with a U-Visa (which provides temporary legal status and work eligibility in the United States) in exchange for her testimony. (*Id*. ¶ 39.) Plaintiff further alleged that J.T.'s statement to the officers amounted to fabricated evidence because the statement was improperly obtained. (*Id*. ¶¶ 37-39.) Finally, Plaintiff included a *Monell* claim alleging that the Town of Cicero and Cook County engaged in a pattern and practice of depriving criminal defendants of their constitutional rights. (*Id*. ¶ 123.)

Defendants moved to dismiss. (Dkt. 25 (Cook County defendants); Dkt. 28 (Town of Cicero defendants).) The Court, by the previously assigned judge, granted the motions and dismissed the case without prejudice. (Dkt. 35.) Regarding the Fourth Amendment claim, the Court rejected it because Plaintiff's allegation that the officers lacked probable cause was "conclusory." (*Id*. at 10.) As to the Fourteenth Amendment claim, the Court explained that Plaintiff failed to allege defendants had an "agreement or understanding" with J.T. regarding the U-Visa. (*Id*. at 7.) Further, the Court dismissed the fabrication of evidence claim because "[e]ven when a plaintiff alleges that an officer coerced a witness to give an incriminating statement, that is not enough to establish that the officer fabricated evidence[.]" (*Id*. at 8 (citing *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017)).) Finally, the Court dismissed the *Monell* claim because the dismissal of Plaintiff's other claims meant that he had not made out an underlying constitutional violation. (*Id*. at 12-13.) Because this was

Defendants' first motion to dismiss, the Court dismissed the complaint without prejudice.

Seeking to cure the defects of his initial complaint, Plaintiff filed an amended complaint. (Dkt. 36.) To establish a Fourth Amendment violation, Plaintiff alleged the individual Defendants (1) "prepared police reports containing false account [*sic*] of how and where [P]laintiff was placed under arrest"; (2) "attested through the official police reports regarding the false account of the circumstances of [P]laintiff's arrest"; and (3) "communicated the false narrative to prosecutors which resulted in [P]laintiff's wrongful detention and prosecution." (*Id.* ¶ 71.) To show Defendants violated the Fourteenth Amendment as well, Plaintiff claimed Defendants reached an undisclosed agreement with J.T. to facilitate her application for a U-Visa in exchange for her testimony. (*Id.* ¶¶ 83-84.)

Defendants moved to dismiss again. (Dkt. 41.) Defendants contended that Plaintiff's Fourth Amendment violation allegations remained conclusory. (*Id.*) Further, Defendants argued that Plaintiff failed to allege a Fourth Amendment "seizure" because he was released on bail rather than detained before trial. (*Id.* at 6.) As to the Fourteenth Amendment claim, Defendants argued that Plaintiff had not adequately alleged that Defendants agreed to certify J.T.'s status as a victim and that Defendants were precluded by law from disclosing to Plaintiff J.T.'s U-Visa status. (*Id.* at 8-9.) Because neither the Fourth or Fourteenth Amendment claim would

survive if the Court accepted those arguments, Defendants argued, the *Monell* claim and state-law indemnification claim would have to be dismissed as well. (*Id*. at 10.)

This time, the Court (again by the previously-assigned judge) granted the motion in part and denied it in part. (Dkt. 53.) The Court held that Plaintiff's fleshed-out allegations cured the conclusory aspects of his original Fourth Amendment claim. (*Id*. at 5-6.) Moreover, although Plaintiff had not alleged he was detained prior to trial, Plaintiff had pleaded that his freedom was restricted by the conditions of his bail, which was enough to plausibly state a Fourth Amendment claim. (*Id*.) As to the Fourteenth Amendment, the Court acknowledged that "Plaintiff does not allege who participated in the certification process" but he had nonetheless stated a *Brady/Giglio* claim by alleging "Defendants came to an agreement [with J.T.] and failed to disclose that agreement to Plaintiff." (*Id*. at 10.) Whether Defendants were barred by law from disclosing J.T.'s U-Visa status, Defendants were obligated to disclose their agreement with J.T. (*Id*.) Because the Fourth and Fourteenth Amendment claims survived, the *Monell* claim could not be dismissed solely based on the lack of an underlying constitutional violation. (*Id*. at 11.)

On January 13, 2020, Plaintiff moved for leave to file the Second Amended Complaint. (Dkt. 71.) Three days later, the Court granted that motion over Defendants' objection. (Dkt. 73.) Plaintiff filed the Second Amended Complaint on January 16, 2020 and added Sergeant Galarza and Detective Savaglio as defendants.

(Dkt. 74.) On February 11, 2020, Defendants moved to dismiss the Second Amended Complaint. (Dkt. 87.) That motion is now fully briefed. (Dkt. 93, Dkt. 102.)

In support of their motion, Defendants contend (1) the newly-added claims against Sergeant Galarza and Detective Savaglio are barred by the statute of limitations (Dkt. 87 at 2-3); (2) Plaintiff has not alleged a Fourth Amendment violation because he has not alleged that the state court placed restrictions on him while he was out on bail, and the state court records show there were none (*id*. at 6-8); (3) Plaintiff's allegation that Defendants failed to disclose their U-Visa arrangement with J.T. is insufficient to state a Fourteenth Amendment claim (*id*. at 3-6); (4) Defendants are entitled to qualified immunity as to the Fourteenth Amendment claim because Plaintiff's right to know about the prosecution's agreement with J.T. regarding her U-Visa application was not clearly established (*id*. at 12-13); and (5) Plaintiff's *Monell* allegations are boilerplate and lack the requisite specificity to survive a motion to dismiss (*id*. at 9-11).[3]

## III.  STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement

---

[3] Defendants also add that certain claims are contingent on others and therefore dismissal of certain claims would result in dismissal of others. Defendants argue (1) the Fourth Amendment claim is barred by the statute of limitations if the Fourteenth Amendment claim is dismissed; and (2) the *Monell* and state-law indemnification claims must be dismissed if the Fourth and Fourteenth Amendment claims are dismissed, as those claims require an underlying constitutional violation. (Dkt. 87 at 6, 12, 14.) Because the Court ultimately holds that the Fourth and Fourteenth Amendment claims must be allowed to proceed, these potential issues are moot.

must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although legal conclusions are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 678-79, the Court, in evaluating a motion to dismiss, must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

## IV.    DISCUSSION

At the outset, the Court must address whether some of Defendants' attacks on the Second Amended Complaint are waived before turning to the merits of Defendants' arguments in favor of dismissal. Ultimately, the Court holds that (1) Defendants did not waive any failure-to-state-a-claim arguments that they did not

present in early motions to dismiss; (2) Plaintiff's claims against Sergeant Galarza and Detective Savaglio are barred by the statute of limitations; (3) Defendants have not raised any new arguments that compel dismissal of Plaintiff's Fourteenth Amendment claims; (4) Defendants have not raised any new arguments that compel dismissal of Plaintiff's Fourth Amendment claims; and (5) Plaintiff's *Monell* claim must be dismissed.

### A. Waiver

Rule 12(g)(2) of the Federal Rules of Civil Procedure provides, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Plaintiff argues this rule precludes Defendants from moving to dismiss the Second Amended Complaint on grounds they could have raised in their motions to dismiss the original and first amended complaints. (Dkt. 93 at 12.) On this basis, Plaintiff asks the Court to reject (1) Defendants' argument that Plaintiff's allegations are insufficient to establish the Town of Cicero engaged in a pattern or practice of constitutional violations, as required to state a *Monell* claim and (2) Defendants' argument that Plaintiff's Fourteenth Amendment claims are barred by the doctrine of qualified immunity. (*Id*. at 13.)

Defendants' new arguments are not precluded under Rule 12(g)(2). As an initial matter, Defendants are permitted to advance new arguments in favor of dismissal because Plaintiff has filed a new amended complaint. *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) ("[W]hen a plaintiff files an amended complaint, the

10

new complaint supersedes all previous complaints and controls the case from that point forward . . . Because a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses." (cleaned up)); *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) ("That the defendants did not raise qualified immunity earlier in response to [plaintiff's] original complaint is irrelevant because the defendants raised the defense of qualified immunity at the very first opportunity after [plaintiff] filed her amended complaint. They then raised it again later in their answer to her amended complaint. Accordingly, as a matter of law, defendants did not waive the defense of qualified immunity" (citing *Massey*, 196 F.3d at 735)).

To be sure, courts in other circuits "invoke Rule 12(g)(2) to reject new arguments raised in a motion to dismiss an amended complaint that could have been raised in a previous motion to dismiss a prior complaint but were not." *ISE Ent. Corp. v. Longarzo*, No. CV 17-9132-MWF (JCX), 2018 WL 5298692, at *4 (C.D. Cal. Apr. 16, 2018) (collecting cases). Once upon a time, that included courts in this district. *E.g.*, *766347 Ontario Ltd. v. Zurich Cap. Markets, Inc.*, 274 F. Supp. 2d 926, 930 (N.D. Ill. 2003) ("Rule 12(g) generally precludes a defendant from bringing successive motions to dismiss raising arguments that the defendant failed to raise at the first available opportunity"). But Defendants correctly point out that the Seventh Circuit has held "Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion" because "Rule 12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). As a decision of the Court of Appeals, *Ennenga* is the

controlling law of this circuit, and it forecloses Plaintiff's argument. This Court will therefore address Defendants' new failure-to-state-a-claim arguments, regardless of whether Defendants could have raised them earlier.

### B. Newly-Added Defendants

Newly-added defendants Sergeant Galarza and Detective Savaglio contend that the claims against them are barred by the statute of limitations. (Dkt. 87 at 2-3.) Because the statute of limitations is an affirmative defense, it is not usually resolved on a motion to dismiss. *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009) ("Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations"). But it may be raised in a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

The statute of limitations for Section 1983 claims brought in Illinois is two years. *Liberty v. City of Chicago*, 860 F.3d 1017, 1019 (7th Cir. 2017). Plaintiff alleges his conviction was reversed on November 13, 2015. (Dkt. 74 ¶ 4.) Yet Plaintiff did not file this action against Sergeant Galarzo or Detective Savaglio until January 16, 2020. (*Id*.) Sergeant Galarza and Detective Savaglio say this is enough to establish their statute of limitations defense as a matter of law. (Dkt. 87 at 2-3.)

Plaintiff responds that his claims are saved by Rule 15 of the Federal Rules of Civil Procedure. (Dkt. 93 at 2-3.) As relevant, that rule provides:

> An amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C). The key phrase is "mistake concerning the proper party's identity." *Id*. As the Supreme Court has held, that provision means "[t]he question under Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known the identity of [the newly-named defendant] as the proper defendant, but whether [that defendant] knew or should have known that it would have been named as a defendant but for an error." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010). The rule thus applies when a defendant is aware (or should be aware) that the plaintiff has named the wrong party as a defendant, but it does not apply to a situation where a plaintiff, in the course of litigating his claims, discovers new claims against new defendants. *See Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006) ("[R]elation back on grounds of mistake concerning the identity of the proper party does not apply where the plaintiff simply lacks knowledge of the proper defendant" (internal citations and quotations omitted)).

Plaintiff's addition of Sergeant Galarzo and Detective Savaglio does not relate back under Rule 15(c)(1)(C)(ii); Plaintiff has not claimed that he named the wrong parties as defendants or that Sergeant Galarzo and Detective Savaglio should have known the wrong parties were named. Plaintiff admits that, although the identities

of Galarza and Savaglio "were known to the plaintiff . . . [,] the claims against them did not becomes apparent until . . . they were deposed." (Dkt. 93 at 3-4.) This is precisely the type of situation where courts have held that Rule 15(c)(1)(C) does not apply. *See, e.g., Mehta v. Vill. of Bolingbrook*, No. 12 C 6216, 2014 WL 7450304, at *4 (N.D. Ill. Dec. 29, 2014) ("Plaintiffs offer no basis whatsoever that would support a finding that the newly-named defendants . . . had any awareness, or should have been aware, that they would have been named as defendants but for a mistake by the plaintiffs. Thus the claims against the defendants do not relate back to the date the original complaint was filed").

Plaintiff had two years under the applicable statute of limitations to sue Sergeant Galarzo and Detective Savaglio, but Plaintiff does not allege that either officer committed any constitutional violation within two years of the filing of the Second Amended Complaint. Because Plaintiff does not identify any valid grounds for tolling the statute of limitations or relating his allegations back to the date of the original complaint, his claims against Sergeant Galarzo and Detective Savaglio are time-barred. *Brooks*, 578 F.3d at 579.

### C. Fourteenth Amendment Claims

Defendants offer three arguments for dismissing Plaintiff's Fourteenth Amendment claim: (1) this Court incorrectly held in its earlier motion to dismiss opinion that Defendants were required under *Brady/Giglio* to disclose their agreement with J.T. regarding her U-Visa application (Dkt. 87 at 3-4); (2) even if the agreement was *Brady/Giglio* material, Defendants are entitled to qualified immunity because it was not "clearly established" that the agreement was

*Brady/Giglio* material at the time they neglected to disclose it (*id*. at 12-13); and (3) Plaintiff's allegations contradict the criminal court transcript and therefore cannot support his claim (*id*. at 5-6.). These arguments are addressed in turn.

As to the first argument, Defendants contend that the Court's earlier ruling "focused on Defendants' arguments that under federal regulations . . . they may not even be provided any information as to what happened in relation to the U-Visa and that they are not the decisionmaker as to if one is granted." (*Id*. at 3 (citing Dkt. 53 at 9-10).) Instead, they say, the Court should have acknowledged "the[ir] argument goes much further than that" because they are "*prohibited* by federal law from disclosing *any* information related to a U-Visa application." (*Id*. at 3-4 (emphasis in original).)

This argument fails. To begin, the Court's earlier ruling did address Defendants' claim that they were prohibited by federal law from disclosing to Plaintiff their agreement with J.T. (*See* Dkt. 53 at 10 (addressing Defendants' argument that "federal law prohibits the use or disclosure of pending or approved U-visa applications unless certain conditions are met").) It is therefore incorrect that the Court did not address all of Defendants' arguments on this subject in its earlier order.

Because the Court ruled on Defendants' argument that the agreement with J.T. was not *Brady/Giglio* material, Defendants are not permitted to raise that argument in their new motion to dismiss; they must move for reconsideration instead. *See Tuhey v. Ill. Tool Works Inc.*, No. 17-cv-03313, 2019 WL 1239799, at *2 (N.D. Ill. Mar. 18, 2019) (holdings in motion to dismiss opinion are law-of-the-case). To prevail on a motion for reconsideration, Defendants would have to offer "a compelling reason,

such as manifest error or a change in the law, that warrants re-examination." *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). Defendants have not brought a motion for reconsideration, articulated the standard for such motions, or otherwise acknowledged that they are seeking relief from the Court's earlier ruling. Because their new motion to dismiss is not the correct procedural vehicle for objecting to the Court's earlier rulings, and because they have not met the standard for reconsideration, the Court rejects Defendants' argument that they were not required under *Brady/Giglio* to disclose their agreement with J.T.

Defendants next argue they are entitled to qualified immunity as to Plaintiff's Fourteenth Amendment claim. Qualified immunity is grounds for dismissal under Rule 12(b)(6) "only when the plaintiffs' well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law.' " *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996)). "Clearly established" in this context means the question must be "beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). According to Defendants, even if their agreement with J.T. was *Brady/Giglio* material that Defendants were required to disclose, Defendants are entitled to qualified immunity because that requirement was not "beyond debate" at the time of their alleged violation. (Dkt. 87 at 12-13.)

With full respect for the important protections provided by the qualified immunity doctrine, the Court finds that the disclosure obligation at issue was beyond debate at the time disclosure should have been made. Under *Giglio*, when the "reliability of a given witness may well be determinative of guilt or innocence," the

16

state must disclose to the defense any material evidence "affecting [the] credibility" of that witness. *Giglio v. United States*, 405 U.S. 150, 154 (1972) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). There is no dispute that the testimony of J.T.—the only eyewitness in Plaintiff's criminal case—was potentially outcome-determinative. And it cannot be reasonably disputed that any promise of immigration benefits by the police and prosecution would have provided rich fodder for cross-examination into whether J.T. shaded her testimony as a perceived *quid pro quo*. Thus the only remaining question is whether clearly established law rendered it "beyond debate" that the agreement required disclosure because it was impeaching of her credibility.

In the Court's view, establish authorities rendered this issue beyond debate. As the Seventh Circuit has repeatedly held, the Constitution requires the government to disclose the terms of any agreement it has with a witness to provide that witness with benefits in exchange for testimony. *See United States v. Boyd*, 55 F.3d 239, 244 (7th Cir. 1995) ("Disclosure of these benefits, of course known to the prosecution (the *source* of the benefits), would have helped the defendants by undermining the credibility of key witnesses against them. The rule of *Brady* applies to evidence usable only to impeach the credibility of the prosecution's witnesses, and not just to direct evidence of innocence"); *United States v. Fallon*, 776 F.2d 727, 734 (7th Cir. 1985) (noting that defendants are entitled to cross-examine witnesses regarding the terms of any agreement they have with the state; *see also United States v. Fregoso-Bonilla*, No. 05-CR-325, 2007 WL 2377306, at *1 (E.D. Wis. Aug. 16, 2007) ("[U]nder *Brady* and *Giglio*, the government must disclose evidence that may be used for impeachment

purposes, including evidence of government favors in exchange for cooperation by a witness").

Longstanding Illinois precedent also explains that impeachment evidence includes "any promises of leniency [that] have been made or any expectations of special favor [that] exist in the mind of the witness." *People v. Triplett*, 485 N.E.2d 9, 15 (Ill. 1985) (quoting *People v. Freeman*, 426 N.E.2d 1220, 1222 (Ill. App. Ct. 1981)); *cf. Freeman*, 426 N.E.2d at 1222 ("Defense counsel need not show beforehand that any promises of leniency have been made" to a witness to impeach that witness's credibility; he must only show that the witness *believed* he would receive leniency).[4] Applying this standard, courts in Illinois have for three decades held that a witness's status as an illegal alien is impeaching because she "might be vulnerable to pressure, real or imagined, from the authorities." *People v. Austin*, 463 N.E.2d 444, 452 (Ill. App. Ct. 1984); *see also People v. Turcios*, 593 N.E.2d 907, 919 (Ill. App. Ct. 1992); *People v. Clamuextle*, 626 N.E.2d 741, 747 (Ill. App. Ct. 1994).

Moreover, the State of Illinois has repeatedly conceded the impeaching nature of an agreement between the state and a witness to help the witness with immigration issues in exchange for testimony. *See, e.g.*, *People v. Roman*, 67 N.E.3d

---

[4] State court decisions are as pertinent as federal court decisions when determining whether an officer acting under color of state law violated a clearly established constitutional right. *See Burgess v. Lowery*, 201 F.3d 942, 946 (7th Cir. 2000) ("[T]here is no basis for an a priori belief that federal judges have a superior perspective on the scope of federal constitutional rights to that of state judges."); *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 573 (7th Cir. 2014) ("In the absence of a controlling decision by the United States Supreme Court, the Wisconsin cases are thus as relevant as our own precedents in evaluating what a Milwaukee police officer might have thought the law permitted . . . "); *Stanton v. Sims*, 571 U.S. 3, 5-6 (2013) (per curiam) (including decisions of both federal and state courts when analyzing whether officers violated a clearly established constitutional right).

987, 993 (Ill. App. Ct. 2016) ("The State denies that it promised to assist [the witness] with immigration and disability benefits issues in exchange for his testimony. The State concedes, however, that if it had done so, that information could have been the subject of impeachment on cross-examination, satisfying the first *Brady* requirement"); *People v. Morales*, 164 N.E.3d 1, 9 (Ill. App. Ct. 2019) ("[A]t oral argument, the State appeared to concede favorability by agreeing that it would have had the obligation to disclose any immigration deal it had with [the witness], if such a deal existed. We agree").

In the light of these federal and state authorities, it was clearly established at the pertinent time that Defendants were required to disclose their agreement to assist J.T. and her family in immigration proceedings. *See, e.g.*, *United States v. Blanco*, 392 F.3d 382, 392 (9th Cir. 2004) ("It is obvious . . . that the government suppressed information that should have been turned over to [the defense] under *Brady and Giglio*" because "[a]ny competent lawyer would have known that [the witness's] special immigration treatment by the INS and the DEA was highly relevant impeachment material"); *United States v. Sipe*, 388 F.3d 471, 490-91 (5th Cir. 2004) (holding that government was required to divulge immigration benefits provided to alien-witnesses where "the aliens' testimony formed the heart of the government's case" because "[t]he aliens could be grilled on the benefits they received from the government in exchange for their testimony"); *United States v. Bin Laden*, 397 F. Supp. 2d 465, 506 (S.D.N.Y. 2005) (recognizing that an agreement to exchange immigration benefits for testimony is impeaching).

Defendants seek to avoid this outcome by pointing to a line of cases from other states that stand for the proposition that a U-Visa application is not *Brady/Giglio* material. (Dkt. 102 at 4 (citing *Gomez v. State of Florida*, 245 So.3d 950, 954 (4th Dist. Fl. 2018); *State v. Buccheri-Bianca*, 312 P.3d 123, 126-127 (Ariz. Ct. App. 2013); *State v. Quintero¸* No. 35752-0-III, 2020 WL 64935, at \*5-6 (Wash. Ct. App. Jan. 9, 2020); *State v. Mahe*, No. 27309, 2017 WL 3971652, at \*3 n.1 (Ohio Ct. App. Sept. 8, 2017); *State v. Morales*, No. C–120670, 2014 WL 467331, at \*4-6 (Ohio Ct. App. Feb. 5, 2014)).) At the outset, these cases might be entirely inapposite in Illinois when contrasted with the Illinois Appellate Court's decisions in *Austin*, 463 N.E.2d at 452, *Turcios*, 593 N.E.2d at 919, and *Clamuextle*, 626 N.E.2d at 747. But more to the point, the cases cited by Defendants concerned disclosure of a U-Visa *application*, not disclosure of an *agreement* between the prosecution and its witness to exchange immigration assistance for testimony. Irrespective of whether the agreement concerned a U-Visa application or some other type of immigration benefit, it is, in the Court's view, "beyond debate" that the agreement itself is *Brady/Giglio* material. *Cf. Taylor v. Ways*, 999 F.3d 478, 492 (7th Cir. 2021) ("[W]hile precedent tied to particularized facts can indicate that a point of law is clearly established, the Supreme Court does not demand a case directly on point"); *Smith v. Finkley et al.*, — F.4th —, No. 20-1754, 2021 WL 3660880, at \*12 (7th Cir. Aug. 18, 2021) (constitutional right "is clearly established if the right in question [is] sufficiently clear that a reasonable official would understand that what he is doing violates that right") (cleaned up).

Third, and finally, the Court will not, as Defendants request, dismiss Plaintiff's Fourteenth Amendment claims because his allegations are contradicted by the state court trial transcript. (Dkt. 87 at 5-6.) Plaintiff alleges that "Defendants in fact testified under oath at the underlying criminal prosecution before a judge consistently with the false police reports." (Dkt. 74 ¶ 112.) Defendants argue this is inaccurate because the transcript shows only Detective Galarza, not all of the Defendants, testified at the trial. (Dkt. 87 at 5.) Plaintiff ripostes that, in fact, the transcript shows both Detective Galarza and Detective John Savage testified at the trial; thus, the allegation in paragraph 112 of the Second Amended Complaint is accurate. (Dkt. 93 at 7.) Each side is, in its own way, wrong. Defendants are incorrect that only Detective Galarza testified. But that does not make Plaintiff's group-pled allegation that all Defendants "testified under oath" accurate. *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful"). In fact, not all Defendants named in this case testified under oath. To the extent Defendants seek to limit Plaintiff's false testimony claims to those Defendants who actually testified, that goes without saying. But, in view of the fact that the bulk of Plaintiff's Fourteenth Amendment claims relate to Defendants' failure to disclose their agreement with J.T., Plaintiff's inartful pleading is not enough to dismiss entirely Plaintiff's Fourteenth Amendment claim.

### D. Fourth Amendment Claims

Plaintiff was released on bail before the trial in his criminal case began. (*See* Dkt. 93 at 8.) Yet, in the Second Amended Complaint, Plaintiff did not include any

allegations regarding the conditions of bail. As a result, Defendants moved to dismiss Plaintiff's Fourth Amendment claims as barred by the statute of limitations. (Dkt. 53 at 7.) Specifically, Defendants argued that Plaintiff's failure to include the conditions of his pretrial release amounted to an admission that the "seizure" ended before his trial and that, therefore, his Fourth Amendment claims accrued more than two years before he asserted them in this case. (*Id.*) In its last motion to dismiss opinion, the previously-assigned judge noted that, depending on what the conditions of his release were, Plaintiff's pretrial release may not have terminated the "seizure." (*Id.* at 6 (citing *Mitchell v. City of Elgin*, 912 F.3d 1012, 1013 (7th Cir. 2019)).) Because Plaintiff was not required to anticipate affirmative defenses such as the statute of limitations, the Court explained, Plaintiff was not required to plead what the conditions of his release were; Plaintiff's claim, therefore, was not time-barred. (*Id.* at 7.)

In their current motion to dismiss, Defendants try to relitigate that holding. In support, they ask the Court to take judicial notice of state trial court documents they say demonstrate Plaintiff was released on bail without significant conditions. (Dkt. 87 at 6-8.) For his part, Plaintiff responds that the trial court documents do not mean what Defendants say they mean, and that he has presented other evidence in discovery demonstrating as much. (Dkt. 93 at 10.)

At this preliminary stage, the Court is not equipped to resolve this dispute one way or another. *Cf. Rickels v. Rzeszewski*, 43 F.3d 1474 (7th Cir. 1994) (recognizing that there was no need to submit evidence at motion to dismiss phase); *see also Smith v. City of Chicago*, 3 F.4th 332, 340-42 (7th Cir. 2021) (Although "standard bond

conditions . . . d[o] not constitute an ongoing seizure," courts must take a "case-by-case approach" because, depending on the circumstances, bail conditions "might constitute a Fourth Amendment seizure"). And to reiterate, a successive motion to dismiss is not a proper vehicle for objecting to this Court's earlier ruling on this issue. (*See* Section IV.C. above (citing *Tuhey*, 2019 WL 1239799, at *2; *Minch*, 486 F.3d at 301).) If Defendants believe they have uncovered evidence sufficient to prove their statute of limitations defense to Plaintiff's Fourth Amendment claims, they will have ample opportunity later to present that evidence.

### E. *Monell* Claim

Defendants argue Plaintiff's *Monell* claim should be dismissed because it is supported only by "boilerplate allegations." (Dkt. 87 at 9.) Defendants did not raise this argument in a previous motion to dismiss; thus it is properly before the Court. (*See* Section IV.A. above.) Plaintiff responds that the following factual allegations are sufficient to state a *Monell* claim:

> Officer Galarza testified under oath that he was told to keep his report "vague" (Dkt. 74, ¶ 90); that Officer Savaglio learned the whereabout of the plaintiff by himself and went to plaintiff's house alone (*Id.* ¶¶ 31-34); that Officer Galarza contradicted Savaglio's testimony by testifying that he and Savaglio went to plaintiff's house together and it was he who had arrested the plaintiff and he had handcuffed the plaintiff. (*Id.* ¶¶ 35, 39); and that Savaglio had testified that plaintiff was never handcuffed and was transported to the police station uncuffed. (*Id.* ¶¶ 40-41).

(Dkt. 93 at 13 (cleaned up).) Plaintiff says these factual allegations support his ultimate conclusion that the Town of Cicero had *de facto* policies, practices, and customs including:

> i. filing false reports and giving false statements and
> pursuing and obtaining wrongful prosecutions and false
> imprisonments on the basis of such reports and
> statements; ii. the failure to properly train, supervise,
> discipline, transfer, monitor, counsel and/or otherwise
> control police officers, particularly those who were
> repeatedly accused of wrongful imprisonments, malicious
> prosecutions and wrongful convictions and of making false
> reports and statements; iii. the police code of silence,
> specifically in cases where police officers refused to report
> or otherwise covered up instances of police misconduct,
> and/or the fabrication, suppression and destruction of
> evidence of which they were aware, despite their obligation
> under the law and police regulations to do so; iv. covering
> up, suppressing and withholding exonerating, exculpatory,
> and/or other evidence favorable to criminal defendants.

(*Id.* at 12-13 (quoting Dkt. 74 ¶ 117).)

These allegations are insufficient to state a *Monell* claim. To state a valid claim, Plaintiff must plausibly allege that the violation of his constitutional rights was caused by (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. *Glisson v. Indiana Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978)). *Monell* must not, however, be transmogrified into a form of *respondeat superior* liability. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). One key to avoiding this impermissible result is "to distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Id.*

Plaintiff does not allege an express government policy or an official with final policymaking authority. This leaves only a widespread and persistent practice theory.

To determine whether a plaintiff has sufficiently pleaded a widespread practice, the Court looks to "the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018). Plaintiff is not required to make allegations regarding others' experiences. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). But the widespread practice must "permeate[] a critical mass of [the] institutional body." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). Misbehavior by one or a group of officials thus is relevant only where "it can be tied to the policy, customs, or practices of the institution as a whole." *Id.*

Plaintiff has not tied his allegations regarding the individual defendant officers to a widespread practice that permeates a critical mass of the Town's police department as a whole. Plaintiff alleges the Town failed to train officers "repeatedly accused of wrongful imprisonments, malicious prosecutions and wrongful convictions and of making false reports and statements" (Dkt. 74 ¶ 117), but he does not allege that the individual officer Defendants (or any other officers) were "repeatedly accused" of those things. Likewise, he complains of a "police code of silence" (*id.*) but does not explain how that applies to his case or any other. Finally, although Plaintiff has alleged that the officers in his case fabricated a police report and failed to disclose an agreement he wished to use as impeachment, there is nothing in the Second Amended Complaint that ties these discrete allegations to a widespread practice. Plaintiff has therefore failed to state a plausible *Monell* claim.

## V.    CONCLUSION

For the reasons provided above, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's claims against Defendants Galarza and Savaglio are barred by the statute of limitations and are therefore dismissed with prejudice. *See Newell v. Velacruz*, 695 F. App'x 973 (7th Cir. 2017) (nonprecedential disposition). Although this is Defendants' third motion to dismiss, this is the first time they have argued that Plaintiff's allegations are too boilerplate to state a *Monell* claim. Accordingly, the Court must afford Plaintiff an opportunity to amend his complaint to cure the defects in his *Monell* claim. *See NewSpin Sports, LLC v. Arrow Electronics, Inc.*, 910 F.3d 293, 310 (7th Cir. 2018) (Plaintiffs "should be given at least one opportunity to try to amend [t]he[i]r complaint before the entire action is dismissed"). If Plaintiff wishes to rehabilitate his *Monell* claim, he has 30 days from the entry of this order to file an amended complaint. Defendants' motion is denied with respect to all of Plaintiff's other claims.

SO ORDERED in 17-cv-03707.

Date:  August 19, 2021

_____
JOHN F. KNESS
United States District Judge